UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LANCE TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV549SNL |
| ) | |
| CATHOLIC CEMETERIES OF THE ) | |
| ARCHDIOCESE OF ST. LOUIS, ET. AL., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM

*Pro se* plaintiff has filed this employment discrimination case alleging that defendant Catholic Cemeteries of the Archdiocese of St. Louis (hereinafter referred to as "Catholic Cemeteries") violated Title VII by discriminating against him in a variety of ways on the basis of race. This matter is before the Court on defendant's motion for summary judgment (#64), filed July 20, 2005. Plaintiff has filed a responsive pleading. This cause of action is set for trial on the Court's non-jury trial docket of October 31, 2005.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Although summary judgment should seldom be granted in employment discrimination cases, it is proper in those cases wherein the plaintiff fails to establish a factual dispute on an essential element of the case. Snow v. Ridgeview Medical Center, 128 F.3d. 1201, 1205 (8th Cir. 1997), *citing* Bialas v. Greyhound Lines, Inc., 59 F.3d. 759, 762 (8th Cir. 1995). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Sys., Inc., 221 F.3d. 1053, 1055 (8th Cir. 2000)(citations

omitted). The Eighth Circuit has "repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based. Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see*, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

Defendant Catholic Cemeteries[1] is a Missouri benevolent corporation which operates fifteen (15) cemeteries in and around the St. Louis area. One of these cemeteries is Calvary Cemetery located at 5239 West Florissant Ave., St. Louis, Missouri. During the relevant time-period, Monsignor Robert L. McCarthy was the Director of Catholic Cemeteries; Tom Kuehner was the Ground Superintendent for Catholic Cemeteries and responsible for hiring both seasonal and regular employees for the various cemeteries; and Bo Erickson was the Foreman at Calvary Cemetery.

---

[1] On October 20, 2004 this Court dismissed with prejudice the individual defendants (McCarthy, Kuehner, and Erickson). *See*, Court Order #28. Defendant Catholic Cemeteries is the only remaining defendant in this case.

Defendant is a signatory to a collective bargaining agreement (CBA) with Local 50 of the Service Employees International Union, AFL-CIO, CLC. The CBA applicable in this case is effective from December 28, 2000 through December 27, 2005. Defendant's Exhibit B.[2] Local 50 is the exclusive bargaining representative for all "regular" workers engaged in maintenance and service work on the grounds and property of defendant. Pursuant to the terms of the CBA, all regular employees are required, as a condition of continued employment with defendant, to be members of Local 50. Defendant's Exhibit A - Affidavit of Tom Kuehner; Defendant's Exhibit B, §9.4.

The CBA allows for the hiring of "seasonal" employees. Seasonal employees may be hired by the defendant between the Monday preceding Easter Sunday by thirteen (13) days and October 31. Kuehner Affidavit; Defendant's Exhibit B, §9.4. Seasonal workers are not required to become members of Local 50. Kuehner Affidavit. Finally, all seasonal employees must work one hundred eighty (180) consecutive days before they can qualify and be considered for regular employment. Kuehner Affidavit; Defendant's Exhibit B, §9.4.

In 2003, Easter Sunday fell on April 20th; thus, pursuant to the terms of the CBA, the earliest defendant could hire seasonal employees was April 7, 2003. Kuehner Affidavit; Defendant's Exhibit B, §9.4; Defendant's Exhibit C.

On April 7, 2003 defendant hired plaintiff as a seasonal employee. Kuehner made the decision to hire plaintiff. Kuehner Affidavit. Plaintiff was not a member of Local 50 and did not become a member of Local 50 upon his employment by defendant. Plaintiff does not dispute the

---

[2]Both parties have submitted a copy of the applicable CBA. The Court's choice of exhibit to cite is not reflective of any bias or preference on the part of the Court.

fact that he was hired as a seasonal employee. Defendant's Exhibit E - Deposition of plaintiff, pgs. 32-33.

Plaintiff worked as a seasonal employee of defendant until October 31, 2003. Defendant's Exhibit D - Plaintiff's Affidavit. On November 3, 2004 plaintiff was informed by Erickson that his employment had been terminated. Plaintiff contacted Kuehner who informed plaintiff that the 2003 season was over and that defendant could no longer employ plaintiff under the terms of the CBA. Kuehner Affidavit. When plaintiff inquired about becoming a regular employee, he was told by Kuehner that a regular employee position was not available and plaintiff would have to find another job.[3]

Following the termination of his seasonal employment, plaintiff filed a union grievance which was denied. In June 2004, he filed an unfair labor practice charge against defendant with the National Labor Relations Board. He claimed that Local 50 had improperly refused to process his grievance and that defendant had not only improperly terminated his employment but also had failed "to pay him the proper wage rate according to the contract for arbitrary, invidious and irrelevant reasons.". Defendant's Exhibit Q - Plaintiff's NLRB Charge. On September 14, 2004 the NLRB dismissed his charge. Defendant's Exhibit R. On November 18, 2004, plaintiff's appeal of the dismissal was denied. Defendant's Exhibit S.

Meanwhile, on November 14, 2003 plaintiff filed a "Charge Questionnaire" with the EEOC alleging that defendant had discriminated against him on the basis of race because Kuehner "hired all the whites and no blacks". Defendant's Exhibit H. There is no allegation or statement

---

[3]The parties dispute the exact nature of the events following plaintiff's communication with Kuehner; i.e., plaintiff's attempt to personally see Monsignor McCarthy. Whatever exactly occurred at Monsignor McCarthy's office is of no concern to the Court since it has no bearing on the issues before the Court.

whatsoever in connection with wages, racial slurs, and/or withholding of taxes from plaintiff's paychecks. In addition to the EEOC Intake Questionnaire, plaintiff submitted to the EEOC a four-page handwritten narrative. This narrative makes no mention or allegation in connection with discrimination based on wages, racial slurs, and/or withholding of taxes from plaintiff's paychecks. Defendant's Exhibit P. Finally, on or about December 4, 2003, EEOC Investigator Cynthia Basile interviewed plaintiff regarding his charge of discrimination. Ms. Basile took notes of this interview which plaintiff concedes accurately reflect the conversation between himself and Ms. Basile. Defendant's Exhibit L - copy of Ms. Basile's interview notes; Plaintiff's Deposition, pgs. 113-15.

At the end of the 2003 work season, Kuehner hired Bill Reynolds (Caucasian) as a regular employee. Reynolds was originally hired as a seasonal worker on April 29, 2003. Kuehner Affidavit. Reynolds was hired as a regular employee on November 3, 2003 after completing 180 consecutive days of employment. Upon becoming a regular employee, Reynolds joined Local 50 and paid union dues. Reynolds had prior experience operating a forklift and had demonstrated proficiency at operating a forklift during the 2003 work season. Kuehner Affidavit. Furthermore, Reynolds had prior experience operating vehicles equipped with a manual transmission and had displayed proficiency operating such vehicles during the 2003 work season. Kuehner Affidavit.

Plaintiff did not have any prior experience operating forklifts. Defendant's Exhibits K and J. As for experience operating vehicles equipped with a manual transmission, plaintiff operated such vehicles as a seasonal worker; however, the vehicle used regularly by plaintiff incurred $2500.00 worth of damage to the clutch of the manual transmission. Kuehner Affidavit.

Finally, Reynolds had a good work history with the defendant during the 2003 work season. During the 2003 work season, plaintiff had been counseled several times for being

-6-

repeatedly late for work which plaintiff admits. Defendant's Exhibit L. Furthermore, plaintiff had been observed several times by his co-worker Jeffrey Miller (African-American) yelling at their foreman, Erickson. Defendant's Exhibit M - Affidavit of Jeffrey Miller.

During the 2003 work season, defendant hired three (3) regular employees: Coy Tinker, Dan Green, and Christopher Wymer; all three are Caucasian. All three hiring decisions were made by Kuehner. Kuehner Affidavit.

Wymer was hired on April 22, 2003. He had sixteen (16) years of prior experience working in cemetery mausoleum vaults. He had prior experience operating a bobcat[4] and a backhoe. Kuehner Affidavit.

Plaintiff did not have any prior experience working in cemetery mausoleum vaults. Plaintiff's Deposition, pg. 54. Although plaintiff claims to have prior experience "from the streets" operating a backhoe, he admits that he had never operated a backhoe for any prior employer nor had told anyone at Catholic Cemeteries about his "street" experience operating a backhoe. Plaintiff's Deposition, pg. 53-54.

Tinker was hired on September 8, 2003. He had prior supervisory experience in the cemetery industry, having worked as the property manager for Chapel Hill Mortuary. Kuehner Affidavit. He also had prior experience operating a backhoe and other heavy machinery routinely used during the 2003 work season. Kuehner Affidavit.

As stated before, plaintiff had only "street" experience operating a backhoe, which he failed to tell anyone connected with defendant. Plaintiff did not have any prior supervisory experience in the cemetery industry. Plaintiff's Deposition, pg. 49.

---

[4]Heavy machinery/vehicle comparable to a small bulldozer.

Green was hired on September 22, 2003. Green had a horticulture certificate and prior experience working in a nursery. Kuehner Affidavit. Plaintiff had neither a horticulture certificate nor prior experience working in a nursery. Plaintiff's Deposition, pg. 51.

After being hired as regular employees, Tinker, Green, and Wymer became members of Local 50 and paid union dues. Kuehner Affidavit.

At the time plaintiff was employed as a seasonal worker by defendant, Catholic Cemeteries employed fifteen (15) regular workers engaged in maintenance and grounds work at Calvary Cemetery. Of those fifteen (15) regular employees, six (6) are African-American, one (1) is Asian, and eight (8) are Caucasian[5]. Kuehner Affidavit.

On May 6, 2004 plaintiff filed a one-count complaint against defendant alleging Title VII race discrimination in not being promoted/hired as a regular employee.[6] However, through discovery responses and other pleadings, it appears that plaintiff is now advancing four (4) separate claims of race discrimination: 1) defendant discriminated against plaintiff, a seasonal employee, on the basis of race when it hired four (4) Caucasian employees, including a Caucasian seasonal employee, for regular employment instead of plaintiff; 2) defendant discriminated against the plaintiff on the basis of race because it paid Caucasian employees a higher hourly rate than plaintiff; 3) plaintiff was subjected to racial harassment by a supervisor; and 4) defendant

---

[5]Defendant lists 6 employees as African-American, 1 employee as Asian, 1 employee as Bosnian, and 7 employees as Caucasian. However, the Court assumes that the Bosnian employee, although a national origin minority, is of the racial majority; i.e. he is Caucasian.

[6]Plaintiff consistently views his cause of action as one for "failure to promote"; the defendant consistently views this cause of action as one for "failure to hire". Upon review of the pleadings, the Court believes that viewing this case as a "failure to hire" case best encompasses the gravamen of plaintiff's claim.

discriminated against plaintiff on the basis of race with regard to the withholding of taxes from his paychecks.

Defendant contends it is entitled to summary judgment on the plaintiff's failure-to-hire claim because plaintiff cannot establish a *prima facie* case of race discrimination because plaintiff was not qualified for the positions for which Wymer, Tinker and Green were hired. It further argues that even if plaintiff has established a *prima facie* case, he has failed to show that the reasons for hiring Wymer, Tinker and Green as regular employees are pretextual. Finally, defendant contends that any Title VII claims regarding plaintiff's wages, racial harassment, and/or withholding of taxes from plaintiff's paychecks must be dismissed for failure to exhaust administrative remedies.[7]

Local Rule 4.01(E) states:

> A memorandum in support of a motion for summary judgment
> shall have attached a statement of uncontroverted material facts,
> set forth in a separately numbered paragraph for each fact, indicating
> whether each fact is established by the record, and, if so, the
> appropriate citations. Every memorandum in opposition shall
> include a statement of material facts as to which the party contends
> a genuine issue exists. Those matters in dispute shall be set forth
> with specific references to portions of the record, where available,
> upon which the opposing party relies. The opposing party also shall
> note for all disputed facts the paragraph number from movant's listing
> of facts. All matters set forth in the statement of the movant shall be
> deemed admitted for purposes of summary judgment unless specifically
> controverted by the opposing party.

Defendant filed a proper Statement of Uncontroverted Material Facts with its summary judgment motion. Plaintiff has failed to file any pleading with his response which specifically disputes any of the material facts listed by the defendant. Plaintiff has failed to file any pleading

---

[7]Defendant also raises other secondary grounds for granting it summary judgment; however, the grounds stated above are determinative of the primary issues before the Court.

which in any manner comports with the requirements of Local Rule 4.01(E). Thus, the Court finds that all matters set forth in the defendant's Statement of Uncontroverted Material Facts are deemed admitted for purposes of the instant summary judgment motion, *see,* Ruby v. Springfield R-12 Public School District, 76 F.3d. 909, 911 n.6 (8th Cir. 1996), and will now apply the relevant law.

Firstly, plaintiff's claims of discriminatory wages, racial harassment, and discriminatory withholding of taxes from his paychecks must be dismissed. As a prerequisite to filing a judicial complaint under Title VII, a plaintiff must file a timely charge with the EEOC. 42 U.S.C. §2000e-5(b). Exhaustion of administrative remedies is essential because it provides the EEOC the first opportunity to investigate discriminatory practices and fulfill its roles of obtaining voluntary compliance and promoting conciliatory efforts. Duncan v. Delta Consolidated Industries, 371 F.3d. 1020, 1024 (8th Cir. 2004); Mohr v. Dustrol, Inc., 306 F.3d. 636, 643-44 (8th Cir. 2002); Shannon v. Ford Motor Co., 72 F.3d. 678, 684 (8th Cir. 1996); Williams v. Little Rock Mun. Water Works, 21 F.3d. 218, 222 (8th Cir. 1994); Graham v. Bryce Corp., 348 F.Supp.2d. 1038, 1041 (E.D.Ark. 2004). Under federal law, a plaintiff has exhausted his or her administrative remedies if "the allegations of the judicial complaint [must be] like or reasonably related to the administrative charges that were timely brought." Boge v. Ringland-Johnson-Crowley Co., 976 F.2d. 448, 451 (8th Cir. 1992) *quoting* Anderson v. Block, 807 F.2d. 145, 148 (8th Cir. 1986); *see*, Mohr, at 645 *citing* Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d. 827, 836 (8th Cir. 2000). While a subsequently filed lawsuit need not mirror the administrative charge claim for claim, the complaint can only sweep as broadly as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge filed. Duncan, at 1025; Mohr, at 644 *citing* Kells, *supra.*; Cobb v. Stringer, 850 F.2d. 356, 359 (8th Cir. 1988); Graham, at 1041;

Johnson v. Pulaski County Special School District, 338 F.Supp.2d. 968, 974 (E.D.Ark. 2004). Although an EEOC charge is to be liberally construed, "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and concilliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." Williams, at 223 *quoting* Babrocky v. Jewel Food Co., 773 F.2d. 857, 863 (7th Cir. 1986); Shannon, at 685; Manse v. Union Electric Co., 961 F.Supp. 1296, 1303 (E.D.Mo. 1997)(citations omitted); *see*, Graham, at 1041-42 *citing* Duncan, at 1025. Even though the plaintiff filed his EEOC charge *pro se* and the Court construes his claims liberally, "there is a difference between liberally reading a claim which `lacks specificity' and inventing, *ex nihilo*, a claim which simply was not made." Duncan, at 1025 *quoting* Shannon, at 685; Graham, at 1043 *citing* Duncan, *supra.* (*quoting* Shannon, *supra.*).

In the present case, plaintiff's claims of wage discrimination, racial harassment, and discriminatory withholding of taxes from his paychecks are not "like or reasonably related to" his EEOC charge that defendant failed to hire him as a regular employee on the basis of race. There is nothing in his EEOC charge or his 4-page attachment to same which even remotely puts the defendant or the EEOC on notice of any discriminatory acts by the defendant with regard to plaintiff's wages or taxes being withheld from his paychecks. Ms. Basile's notes do not reflect any conversation regarding these additional claims of discrimination. There is nothing in these documents which assert any racial slurs by Erickson or any other personnel associated with defendant.[8] A failure to hire is a discrete act of discrimination which would not encompass unalleged, ongoing disparate wage, withholding taxes, and/or racial harassment claims. *See*,

---

[8] In his deposition, plaintiff admits that his four-page narrative fails to contain any reference whatsoever to any racial slurs attributable to Erickson or any other Catholic Cemeteries' employee. Plaintiff's Deposition, pgs. 108-9, 112.

Mohr, at 645. Plaintiff's claims of wage discrimination, racial harassment, and discriminatory withholding of taxes from his paychecks must be dismissed as being outside the scope of his EEOC charge, and therefore, not administratively exhausted.

As for plaintiff's failure to hire claim based on race discrimination, this claim too fails. Plaintiff has failed to provide any evidence which establishes a *prima facie* case of race discrimination or that the defendant's reason(s) for not hiring plaintiff as a regular employee was a pretext for race discrimination.

A plaintiff in a Title VII race discrimination case can proceed in one of two ways. Stacks v. Southwestern Bell Yellow Pages, 996 F.2d. 200 (8th Cir. 1993). When a plaintiff produces direct evidence, such as statements by decisionmakers clearly showing that race was a motivating factor in the employment decision; or at least significant circumstantial evidence showing a specific link between the discriminatory animus and the challenged employment decision, the burden-shifting standards established by Price-Waterhouse v. Hopkins, 490 U.S. 228 (1989), come into play. Stacks v. Southwestern Bell Yellow Pages, 996 F.2d. at 201 n.1; Beshears v. Asbill, 930 F.2d. 1348, 1353 (8th Cir. 1991). In the absence of such evidence, the guidelines set forth in McDonnell-Douglas v. Green, 411 U.S. 792 (1973) are applicable. Stacks v. Southwestern Bell Yellow Pages, 966 F.2d. at 202; Johnson v. Minnesota Historical Society, 931 F.2d. 1239, 1242-43 (8th Cir. 1991); Halsell v. Kimberly-Clark, 683 F.2d. 285, 289 (8th Cir. 1982), *citing*, Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), *cert. den.*, 459 U.S. 1205 (1983). Since there is no direct evidence or specific circumstantial evidence

of race discrimination, the Court will analyze plaintiff's discrimination claims under the McDonnell Douglas standard.[9]

McDonnell Douglas, *supra*., established a three-part analysis for Title VII disparate treatment cases. Under McDonnell Douglas, a Title VII plaintiff must first establish a *prima facie* case of intentional discrimination by a preponderance of the evidence. If the plaintiff successfully establishes a *prima facie* case of intentional discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. If the defendant employer meets this burden of production, the plaintiff employee must show by a preponderance of evidence that the articulated reason(s) for the challenged employment action are pretextual and that the illegitimate criterion was the motivating reason. At all times the plaintiff employee possesses the ultimate burden of proving to the Court that s/he was the victim of intentional discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Ghane v. West, 148 F.3d. 979, 981 (8th Cir. 1998); McCullough v. Real Foods, 140 F.3d. 1123, 1126-27 (8th Cir. 1998); Rose-Maston v. NME Hospitals, 133 F.3d. 1104, 1107-08 (8th Cir. 1998); Rothmeier v. Investment Advisors, 85 F.3d. 1328, 1332 (8th Cir. 1996); Ruby v. Springfield R-12

---

[9]The Court is aware that plaintiff has alleged as part of his (now dismissed) racial harassment claim that Erickson made two (2) derogatory remarks to plaintiff: one instance when Erickson used the word "nigger" in reference to the plaintiff; and another instance wherein Erickson told the plaintiff and another African-American employee (Melvin Phillips) that Erickson did not want "you boys drinking out of my coffee pot." Plaintiff's Deposition, pgs. 103-4; 168. The Court finds these two instances (over a seven-month period) to be "stray remarks in the workplace". "Not every prejudiced remark made at work supports an inference of discrimination." Mohr, at 640-41 (citations omitted). Plaintiff does not dispute the fact that Kuehner alone made the hiring decisions nor has plaintiff provided any evidence that Erickson was directly involved in the decisionmaking process as to the hiring of regular employees or the decision not to hire plaintiff as a regular employee. Thus, these alleged remarks are not deemed direct evidence of discrimination for Title VII purposes.

Public School Dist., 76 F.3d. 909, 911-12 (8th Cir. 1996); Favors v. Fisher, 13 F.3d. 1235, 1237-38 (8th Cir. 1994); *see also*, Carter v. St. Louis University, 167 F.3d. 398, 401 (8th Cir. 1999).

In establishing a *prima facie* case of intentional discrimination, Taylor must produce sufficient evidence to support an inference that he was not hired for regular employment for racially discriminatory reasons. The threshold of proof required in establishing a *prima facie* case is "minimal". Pope v. ESA Services, 406 F.3d. 1001, 1007 (8th Cir. 2005); Turner v. Honeywell Fed. Mfg. & Techs., L.L.C., 336 F.3d. 716, 720 (8th Cir. 2003); Johnson v. Arkansas State Police, 10 F.3d. 547, 551 (8th Cir. 1993). "The elements necessary to establish a prima facie case vary according to the circumstances of the alleged discrimination." Favors v. Fisher, at 1237 *quoting* Jones v. Frank, 973 F.2d. 673, 676 (8th Cir. 1992); *see also* Williams v. Ford Motor Co., at 1308.

In order to establish a *prima facie* case for a Title VII failure to hire claim, Taylor must establish that 1) he is a member of a protected class; 2) he applied and was qualified for the job sought; 3) he was rejected for the job; and 4) a similarly-situated person, outside plaintiff's protected class, was given the job.[10] Pope, at 1007 (failure to promote); Rose-Maston v. NME Hospital, 133 F.3d. 1104, 1109 (8th Cir. 1998)(failure to promote); Dare v. Wal-Mart Stores, Inc., 267 F.Supp.2d. 987, 993 (D.Minn. 2003)(failure to hire); Josephson v. Kimco Corp., 240 F.Supp.2d. 1000, 1007 (S.D.Iowa 2003)(hybrid failure to promote/hire). Defendant contends that plaintiff has failed to establish a *prima facie* case as to the hiring of Tinker, Green, and

---

[10]Although the Court has decided to view plaintiff's claim as a "failure to hire" claim, it recognizes that this case also has elements of a "failure to promote" claim. The elements of a *prima facie* case of racial discrimination based upon a "failure to hire" claim is very similar to that of a "failure to promote" claim. Given that this case presents a "hybrid" claim, the Court has elected to review plaintiff's *prima facie* case with some degree of flexibility as to the elements. *See*, McDonnell Douglas, 411 U.S. at 802 n.13 (facts vary in Title VII cases and the prima facie proof required of a plaintiff may differ according to the factual situation at hand).

Wymer because the undisputed evidence shows that plaintiff was not qualified to be a regular employee at the times these three (3) persons were hired as regular employees.

The undisputed evidence is that during the 2003 work season, defendant hired three (3) Caucasian males as regular employees: Christopher Wymer, Coy Tinker, and Dan Green. Wymer was hired on April 22, 2003; Tinker was hired on September 8, 2003; and Green was hired on September 22, 2003. During the 2003 work season plaintiff was employed as a seasonal employee and as such, he was not qualified to be considered for employment as a regular employee until he had worked 180 consecutive days. At the time these regular positions were filled, plaintiff had not completed his 180 days of seasonal employment and, therefore, was not qualified for any of these positions under the terms of the CBA. Plaintiff cannot establish a *prima facie* case of discrimination with respect to these three (3) positions.[11]

As for Reynolds, the Court finds that plaintiff has minimally established a *prima facie* case of race discrimination as to his failure to hire claim. Since Reynolds was hired as a regular employee on November 3, 2003; plaintiff would have met the 180 consecutive day prerequisite for consideration as a regular employee (plaintiff's 180 day period ended October 4, 2003). Furthermore, both Reynolds and the plaintiff had been seasonal workers during the 2003 work season. Since defendant has not articulated the job performance requirements for the position

---

[11]Plaintiff's only response to the instant summary judgment motion is to simply give his interpretation of certain provisions of the CBA. It appears that he is arguing that he was a "365 day probationary employee" who had "seniority" over Wymer, Green, and Tinker. Plaintiff's argument is irrelevant to the issue at hand. He was a seasonal employee who had to have 180 days of consecutive work in order to be considered for employment as a regular employee. This is an undisputed fact. Wymer, Green, and Tinker were not seasonal employees. They were hired as regular employees (not having a prerequisite of 180 consecutive work days) and as new regular hires would be subject to a 365 day probationary period (during which time any one of them could be terminated without cause). It simply doesn't matter that he had been working at Calvary Cemetery prior to any one of their hire dates.

given to Reynolds, the Court must assume that plaintiff was also as qualified since he had worked the entire 2003 work season without being terminated. The Court must also assume that both Reynolds and the plaintiff were "similarly situated". The threshold test at the *prima facie* stage is "low". Rodgers v. U.S. Bank, N.A., - F.3d. - , 2005 WL1844477 (8th Cir., August 5, 2005); Turner v. Honeywell Federal Manufacturing & Technologies, L.L.C., at 722 )("similarly situated" test at prima facie stage is "less rigid"). Thus, plaintiff had met the minimal requirements for being hired as a regular employee, had applied for a regular employee position, had been rejected, and the position was given to a similarly situated person outside plaintiff's protected class.

Assuming that plaintiff has met his *prima facie* requirements as to all four (4) hires, the burden shifts to defendant to proffer a non-discriminatory reason for each of its hiring decisions. Defendant has met this next level of inquiry under the McDonald Douglas shifting-burden framework by articulating a legitimate, non-discriminatory reason for hiring Reynolds, Wymer, Tinker, and Green, instead of the plaintiff, as regular employees: each of the hires was more qualified than plaintiff.

In light of defendant's proffering of legitimate, non-discriminatory reasons for its employment decisions, the question now becomes whether, in viewing the record in the light most favorable to Taylor, there is sufficient evidence from which a jury could conclude that Catholic Cemeteries' proffered reasons were a pretext for masking intentional race discrimination. *See*, Brooks v. Ameren U.E., 345 F.3d. 986, 988 (8th Cir. 2003); Turner v. Honeywell Fed'l Mfg., at 719-20. Upon review of the evidentiary record before the Court, the Court finds that plaintiff has not met his burden in demonstrating that defendant's proffered reasons for hiring Reynolds, Wymer, Tinker, and Green as regular employees over the plaintiff were merely pretexts for intentional race discrimination.

Each of the four (4) hires possessed superior skills, traits, or training that were advantageous to them and which plaintiff did not possess. Reynolds had experience operating a forklift and vehicles with manual transmissions, and had demonstrated his proficiency operating such vehicles during the 2003 season. Plaintiff did not have forklift experience, and during his employment as a seasonal employee, had in fact caused $2500 worth of damage to the clutch of a manual transmission vehicle. Wymer had 16 years of mortuary vault experience and operating heavy machinery (backhoe and bobcat). Plaintiff did not have such experience. Tinker had previously worked as a property manager for Chapel Hill Mortuary, and had experience operating heavy equipment. Plaintiff did possess any prior supervisory experience in the cemetery industry. Green possessed horticulture certification and had experience working in nurseries; plaintiff did not possess such experience. Identifying those strengths that constitute the best qualified regular employee is for the defendant to do, not the Court because "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments, except to the extent those judgments involve intentional discrimination." Kincaid v. City of Omaha, 378 F.3d. 799, 805 (8th Cir. 2004) *quoting* Hutson v. McDonald Douglas Corp., 63 F.3d. 771, 781 (8th Cir, 1995); Duffy v. Wolle, 123 F.3d. 1026, 1038 (8th Cir. 1997) *quoting* Hutson, *supra.*

Furthermore, plaintiff had exhibited poor job performance by being repeatedly late for work and being observed several times yelling at his foreman, Erickson. Considerations such as the past attitude of a plaintiff towards the company, supervisors, and co-workers can legitimately be used in making employment decisions. Lidge-Myrtil v. Deere & Co., 49 F.3d. 1308, 1312 (8th Cir. 1995); Locke v. Kansas City Power & Light Co., 660 F.2d. 359, 365 (8th Cir. 1981).

The evidence before the Court, looking at it in a light most favorable to the plaintiff, does not allow any reasonable juror to conclude that any one of the four (4) hires were the result of

-17-

race discrimination. Taylor offers no evidence that would support an inference that the defendant's reasons for hiring Reynolds, Wymer, Tinker, and Green were pretextual. In fact, Taylor offers no evidence whatsoever regarding the qualifications of any one of these individuals who ultimately were hired as regular employees, and he stated in his deposition that he was entirely unaware of any one of these individual's qualifications. Plaintiff's Deposition, pgs. 49, 51-54. Plaintiff has failed to show that he and the employees outside of his protected group were similarly situated in all relevant respects. *See*, Rodgers v. U.S. Bank, N.A., *supra.*; Gilmore v. A.T.&T., 319 F.3d. 1042, 1046 (8th Cir. 2003). Furthermore, at the time plaintiff was employed by defendant as a seasonal employee, Catholic Cemeteries employed fifteen (15) regular employees engaged in maintenance work and servicing the grounds and property at Calvary Cemetery. Of these fifteen (15) regular employees, six (6) are African-American, one (1) is Asian, and eight (8) are Caucasian. Four long-term African-American regular employees have attested that they have not observed any racial discrimination in job assignments at Calvary Cemetery. Defendant's Exhibit F - Affidavit of Kevin Taylor; Defendant's Exhibit M - Affidavit of Jeffrey Miller; Defendant's Exhibit W - Affidavit of Greg Coffin; Defendant's Exhibit X - Affidavit of Sam Bell, Jr.

      Plaintiff has failed to set forth any affirmative evidence showing that any reasonable juror could conclude that plaintiff was not hired as a regular employee on the basis of race. Plaintiff has failed to create a genuine issue of fact as to the issue of pretext. He has failed to provide any affirmative evidence showing that the reasons given by defendant for hiring Reynolds, Wymer, Tinker and/or Green as regular employees were not legitimate, and in fact, were a pretext for intentional race discrimination.

In light of the above findings, the Court will grant summary judgment to defendant on all claims as contained in plaintiff's complaint.

Dated this   30th   day of August, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE